UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WESTINGHOUSE ELECTRIC ) | |
| COMPANY LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:03CV861SNL |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

This matter is before the Court on a Joint Motion to Dismiss Counts II and III of Westinghouse Electric Company LLC's Second Amended Complaint for Failure to State a Cause of Action (#111) filed by Defendants Chevron U.S.A. Inc., Valley Pines Associates, Mallinckrodt Inc., and United Nuclear Corporation (the "Movants").[1] Westinghouse Electric Company LLC ("Westinghouse") has filed a Memorandum in Opposition to the instant Motion, and the Movants have filed a Reply to Westinghouse's Memorandum in Opposition. Consequently, the Joint Motion to Dismiss is now ripe for ruling. Also, before the Court is Westinghouse's Motion for Additional Time to Respond to the instant Motion which is unopposed (#118).

### Motion to Dismiss

In passing on a motion to dismiss, a court must view the facts alleged in the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1603, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986). The court should not grant a motion to dismiss merely because the complaint does not state with precision every element of the offense

---

[1]Valley Pines Associates joins the instant Motion as to Count III only.

necessary for recovery. 5 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil, Sec. 1216 at 120 (1969). A complaint is sufficient if it contains "allegations from which an inference can be drawn that evidence on these material points will be introduced at trial." Id. at 122-123. Moreover, a court should not dismiss a complaint unless it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

The Court must view the complaint in the light most favorable to the plaintiff and should not dismiss it merely because the Court doubts that the plaintiff will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d. 1053, 1058 (8th Cir. 1982). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982). With this standard in mind, the Court turns to an examination of Westinghouse's Second Amended Complaint.

**Background**

On or about June 26, 2003, Westinghouse filed this civil action, and has since amended its Complaint twice. Westinghouse filed its four-count Second Amended Complaint (the "Complaint") on December 20, 2004, to recover costs that it allegedly has incurred and will allegedly continue to incur in order to clean up a former nuclear fuel processing plant in Hematite, Missouri (the "Hematite Site"). The Hematite Site was owned and operated by several different entities, and its primary special nuclear material license was also held by several different entities until eventually both the Hematite Site and the license were acquired by Westinghouse. The factual details of the relative ownership of the Hematite Site and the nuclear material license are significant in regard to the instant Motion to Dismiss.

According to the Complaint, Mallinckrodt[2] constructed a nuclear fuel development and processing plant in Hematite, Missouri in 1956. Mallinckrodt owned and operated the Hematite Site from July 1956 though May 1961. The primary license for the Hematite Site, Special Nuclear Material License 33 ("SNM-33"), was issued to Mallinckrodt Chemical Works on July 18, 1956; and for a period of time Mallinckrodt Nuclear Corporation held the SNM-33 license.

Mallinckrodt and two other entities, Nuclear Development Corporation of America and Olin Mathieson Chemical Corporation, formed a joint venture corporation known as UNC on May 31, 1961. UNC held the SNM-33 license and owned and operated the Hematite Site through June 1971. Thereafter, on July 1, 1971, UNC and Gulf Oil Corporation formed a joint venture corporation, GUNFC[3] which held the SNM-33 license and owned and operated the Hematite Site through January 1974. On January 1, 1974, GAC[4] acquired ownership of the Hematite Site and continued to hold the SNM-33 license. Later that same year in May of 1974, Combustion Engineering, Inc. purchased the Hematite Site and held the SNM-33 license. Combustion Engineering, Inc. operated the Hematite Site through April 2000.

In April 2000, after the SNM-33 license and the Hematite Site were held and owned by the above described entities, Westinghouse acquired the stock of ABB C-E Nuclear Power, Inc., which owned the Hematite Site. In addition, Westinghouse now holds the SNM-33 license.

---

[2]In the instant Motion, Mallinckrodt refers to the collective group consisting of: Mallinckrodt, Inc., Mallinckrodt Chemical Works, and Mallinckrodt Nuclear Corporation. Mallinckrodt Inc. was formerly known as Mallinckrodt Chemical Works and Mallinckrodt Nuclear Corporation. See, Second Am. Compl. ¶ 3.

[3]In the instant Motion, GUNFC refers to Gulf United Nuclear Fuels Corporation. Chevron U.S.A. Inc. was formerly known as Gulf United Nuclear Fuels Corporation. See, Second Am. Compl. ¶ 5.

[4]In the instant Motion, GAC refers to General Atomic Company. Valley Pines Associates was formerly known as General Atomic Company. See, Second Am. Compl. ¶ 6.

According to the Complaint, the Hematite Site's primary function was to manufacture uranium metal and uranium compounds from natural and enriched uranium for use as nuclear fuel. In fact, during the period from 1956 through 1974, the Hematite Site was primarily used to convert government-owned uranium hexafluoride ($UF_6$) gas of various $U_{235}$ enrichments to uranium oxide, uranium carbide, uranium dioxide pellets, and uranium metal pursuant to contract, directly and indirectly with the United States.[5] During these same years, the Hematite Site also served as a licensed uranium scrap recovery facility for the United States.

Westinghouse contends that its investigation of the Hematite Site has revealed radiological, chemical and other hazardous substance contamination in certain areas, particularly those areas related to work that was performed for the Untied States. It maintains that disposals and releases of hazardous substances occurred in numerous areas throughout the entire period of operations. Specifically, Westinghouse claims that beginning no later than 1965, but perhaps as early as 1958 or 1959, and continuing until at least November 1970, hazardous substances, including materials and wastes contaminated with radiological and chemical constituents, were buried in on-site pits at the Hematite Site. Westinghouse further alleges that testing at and in the vicinity of the Hematite Site has detected the presence of volatile organic compounds ("VOCs") such as trichloroethylene and other hazardous substances in the groundwater. Westinghouse maintains that VOCs have been detected in the drinking water supply of homes located near the Hematite Site. Westinghouse argues that the releases and threatened releases of hazardous substances and the damages resulting therefrom were caused solely by acts or omissions of a third party other than an employee or agent of Westinghouse.

---

[5]The United States is a named Defendant in this case as Westinghouse alleges it acted though the Atomic Energy Commission ("AEC"). However, the United States is not a named Defendant regarding the two counts involved in the instant Motion.

On or about September 26, 2003, the State of Missouri filed a civil action against Westinghouse under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), Section 107(a), 42 U.S.C. § 9607(a). Thereafter, in March 2003, the State of Missouri and Westinghouse entered into a letter agreement that administratively settled certain aspects of Westinghouse's liabilities and potential liabilities. Apparently, the agreement with the State of Missouri resolved Westinghouse's liability to the State for some or all of a response action or for some or all of the costs of such action.

## Discussion

The Movants seek to dismiss two of the four counts alleged in the Complaint. The challenged counts include claims for strict liability (Count II) and state law contribution (Count III). The Movants have not sought dismissal of the remaining two counts which include Westinghouse's claims for recovery of costs under CERCLA, 28 U.S.C. § 9601 *et seq.* (Count I) and Westinghouse's claim for Declaratory Judgment (Count IV).[6]

*I. Count II -- Strict Liability*

In Count II, Westinghouse asserts a claim against the Movants for strict liability. Westinghouse alleges that each Movant, save Valley Pines Associates, during its respective ownership of the Hematite Site, engaged in an ultrahazardous activity by disposing of nuclear waste in on site pits. See, Second Am. Compl. ¶¶ 53 - 56. Westinghouse argues that the environmental contamination which occurred during Mallinckrodt, UNC and GUNFC's ownership of the Hematite Site has harmed Westinghouse in that Westinghouse has incurred, and

---

[6]However, the Non-Governmental Defendants have filed a Motion for Summary Judgment on the remaining two counts, Count I and Count IV, but that motion is not presently before the Court.

will incur, cleanup costs in connection with the remediation of the Hematite Site as a result of the abnormally dangerous activities.

This claim basically arises from the Movants' alleged contamination of the Hematite Site during their respective periods of ownership. Therefore, as a preliminary matter, the Movants note that the Missouri courts have not addressed the narrow issue as to whether one may be strictly liable for contamination of one's own property. Westinghouse concurs in its Memorandum in Opposition that Missouri courts have not addressed this narrow issue.

The Movants make two arguments as to why Count II of Westinghouse's Complaint should be dismissed. First, the Movants argue that the United States District Court for the Eastern District of Missouri has determined that a party cannot be held strictly liable for damage inflicted upon it own property. In support, the Movants cite two cases from this District, Judge Stohr's decision in <u>Cross Oil Co. v. Philips Petroleum Co.</u>, 944 F.Supp. 787 (E.D.Mo. 1996), and Judge Hamilton's unpublished decision in <u>Local No. 682 Health and Welfare Trust Fund v. Whiting</u>, 1992 WL 799413 (E.D.Mo. May 19, 1992). Additionally, the Movants cite a case from a Massachusetts federal district court, <u>Wellesley Hills Realty Trust v. Mobil Oil Corp.</u>, 747 F.Supp. 93 (D. Mass. 1990). Second, the Movants argue that Westinghouse assumed the risk of radiological contamination when it acquired the nuclear license to operate the Hematite facility.

Westinghouse argues in opposition to the Motion that it can bring its strict liability claim because unlike the cases of <u>Cross Oil</u> and <u>Wellesley</u>, Westinghouse argues that harm has traveled outside of the Hematite Site, "Here, of course, [Movants'] abnormally dangerous activity has caused harm to the property of another, indeed, of many others. Specifically, [Movants'] activity has caused hazardous chemicals to contaminate the groundwater supply and the property of residents of a nearby community." <u>See</u>, Mem. in Opposition at 4. Presumably, Westinghouse is

referring to the VOCs such as trichloroethylene and other hazardous substances in the groundwater that left the Hematite Site as referenced in its Complaint. Interestingly, Westinghouse alleges no other specific damage of off-site impact from radiological contamination or otherwise.[7] Westinghouse further argues that the "[Movants'] abnormally dangerous activity caused both the State of Missouri and the nearby residents to sue Westinghouse for harm to the property of the State and the residents, respectively. Thus, Defendants' conduct did cause 'harm to the property of another,' and the Complaint in this matter states a claim for strict liability even under Cross Oil and Wellesley." Id. at 4-5.

The harm that has allegedly traveled outside of the Hematite Site does not automatically take this case out of the body of caselaw that holds that one cannot be strictly liable for damage inflicted on one's own property, as Westinghouse seemingly argues. In a case such as the instant suit with damage inflicted on-site and damage inflicted off-site, these separate and distinct harms each need to be analyzed. Accordingly, this Court will first address whether one can be strictly liable for damage inflicted upon one's own property because Westinghouse is alleging that the Movants damaged the Hematite Site when they had respective ownership of it. Next, this Court will address whether one can be strictly liable to a property owner for the harm done to nearby residents because Westinghouse is alleging that the Movants have caused harm to residents located near the Hematite Site.

In Whiting, the plaintiffs alleged that the defendants buried hazardous waste on property previously owned and operated by the defendants, later owned and operated by the plaintiffs.

---

[7]The Movants argue strongly to this Court that the presence of VOCS in the groundwater would not be recognized by the Missouri courts because the Missouri courts "would not expand the doctrine to mere solvent contamination." See, Reply at 7. In any case, the issue is of no consequence in resolving the instant Motion because of the reasons discussed herein; as discussed *infra* this Court's opinion does not turn on the nature of the alleged off-site contamination.

Local No. 682 Health and Welfare Trust Fund, 1992 WL 799413, 1 (E.D.Mo. May 19, 1992).

The plaintiffs alleged that the burial occurred during the time the defendants owned the property.

Id. In Whiting, the Court dismissed the plaintiffs' claim based upon strict liability. Id. at 2. The

following reasoning by Judge Hamilton in Whiting was explicitly adopted by Judge Stohr in Cross

Oil Co.:

> Section 519(1) of the Restatement (Second) of Torts provides that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm" Restatement (Second) of Torts § 519(1) (1977). This rule of strict liability was originally set forth in Rylands v. Fletcher, L.R. 1 Ex. 265 (1866). Rylands held that if a person brings something on his land which, if it escapes, is likely to do harm, that person is prima facie liable for all the damage naturally occurring if there is an escape. Id. at 279.
> Missouri courts have applied the rule of Rylands v. Fletcher very narrowly. Bennett v. Mallinckrodt, Inc., 698 S.W.2d, 854, 868 (Mo.App.1985), cert. denied, 476 U.S. 1176 [106 S.Ct. 2903, 90 L.Ed.2d 989] (1986). Further, Missouri courts have only applied the strict liability rule where the defendant's activity harms the person or property of another. Cross Oil Co., 944 F.Supp. at 790.

In Cross Oil Co., the plaintiff as the current owner of environmentally contaminated

property argued that the previous owner was strictly liable because it had operated a gasoline

station with underground storage tanks on the property which contaminated the land. Cross Oil

Co., 944 F.Supp. at 789. The plaintiff argued that such activity was abnormally dangerous or

ultrahazardous. Id. The defendant filed a motion to dismiss the strict liability count, and the

motion was granted by Judge Stohr. Id. at 790.

Judge Stohr noted that while the Missouri courts have not addressed this exact issue, they

have applied the doctrine of strict liability narrowly and only where the defendant's activities

caused harm to the property of another. Cross Oil Co., 944 F.Supp. at 790. In reaching his

conclusion, Judge Stohr adopted the reasoning of Judge Hamilton unpublished decision in

Whiting and the reasoning of the Massachusetts district court opinion cited by the Movants, Wellesley Hills Realty Trust, 747 F.Supp. 93. Id.

In Wellesley, the plaintiff as the current owner of contaminated property filed suit against the prior owner alleging that the defendant contaminated the property by releasing oil and hazardous materials during its ownership when it operated a gasoline service station on the property. Wellesley Hills Realty Trust, 747 F.Supp. at 94. The plaintiff asserted a count for strict liability, and the defendant filed a motion to dismiss the strict liability count. Id. In granting the motion to dismiss the strict liability count, the Court in Wellesley stated:

> As is evident from the Restatement's statement of the rule of strict liability, the harm for which an actor who conducts an abnormally dangerous activity will be strictly liable is the harm to the person or property *of another*. (emphasis in original) ... Despite the expansion of the rule, however, harm to the property or person *of another* has always been required. (emphasis in original) It would be nonsensical to even formulate a rule that an actor is strictly liable for harm inflicted on his or her own property or person. Nevertheless, [plaintiff] indirectly asks this courts to formulate such a rule.
> At the time [defendant] operated the gas station and releases of oil inflicted harm to the property, [defendant] owned the property. Thus, [defendant's] operation of the gas station caused harm to property *of its own*, not property *of another*. The site became property of [plaintiff] only after the contamination, the harm, had occurred. No matter how viewed, therefore, [defendant] can not be accused of having caused harm to the property of another because of releases of oil on its own property resulting from its operation of a gas station. Id. at 101-102.

The case at bench is very similar to Cross Oil, Whiting, and Wellesley. Westinghouse has admitted that it is the current owner of the Hematite Site. Furthermore, it has alleged that each Movant engaged in activities that contaminated the site during its respective period of ownership. Finally, Westinghouse has alleged that those activities constituted an ultrahazardous activity, thus subjecting Movants to strict liability for costs Westinghouse allegedly has incurred, or will incur, in cleaning up the Site. Given the strikingly similar factual background in Cross Oil, Whiting, and Wellesley concerning the on-site damage, coupled with the well-reasoned opinions by Judges

Stohr and Hamilton and the well-reasoned opinion in Wellesley, this Court adopts the reasoning in Cross Oil, Whiting, and Wellesley and holds that the Movants cannot be strictly liable for the harm they inflicted upon their former property, the Hematite Site.

Now this Court must consider the remaining issue of whether the Movants can be strictly liable for the alleged damage inflicted upon off-site nearby residents, outside of the Hematite Site. Specifically, Westinghouse is alleging that the Movants should be held strictly liable for the presence of VOCs, such as trichloroethylene and other hazardous substances in the groundwater. Westinghouse alleges that VOCs have been detected in the drinking water supply of homes located near the Hematite Site and that the presence of VOCs is the result of Defendants' use, handling and disposal of the solvents in the burial pits and evaporation ponds. Basically, Westinghouse is alleging that nearby residents have been harmed because the Movants have contaminated the water supply. For purposes of the instant Motion, the Court will assume that such damage exists and that it was caused by the Movants.

In support of their Motion, the Movants note that Westinghouse has cited no Missouri case law that would enable it, as opposed to its neighbors, to bring a strict liability claim for the damage inflicted off-site. The Movants primarily argue that Westinghouse has not plead that there has been any off-site radiological exposures or migration, and that the Missouri courts would not extend the doctrine of strict liability to VOCs as common solvents. Although the Movants every so subtly suggest that it is questionable whether Westinghouse could bring a claim, the Movants never explicitly challenge Westinghouse's standing on this issue, which is a jurisdictional requirement that concerns this Court.

As a jurisdictional requirement, standing can be raised by the court *sua sponte* at any time during the litigation. Delorme v. United States, 354 F.3d 810, 815 (8th Cir. 2004); See also,

FED.R.CIV.P. 12(h)(3). "The standing doctrine serves to limit federal jurisdiction to cases and controversies as required by Article III of the United States Constitution." Shain v. Veneman, 376 F.3d 815, 817 (8th Cir. 2004) citing Lujan v . Defenders of Wildlife, 504 U.S. 555, 559-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A party invoking federal jurisdiction has the burden of establishing standing, Schanou v. Lancaster County Sch. Dist., 62F.3d 1040, 1045 (8th Cir. 1995), by alleging and eventually proving he has suffered an injury-in-fact traceable to the defendant's challenged action and redressable by the court's favorable decision. Lujan, 504 U.S. at 560-561, 112 S.Ct. 2130.

"For purposes of standing, *a plaintiff's injury* must consist of an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Shain, 376 F.3d at 818 (emphasis added). The problem with Westinghouse's strict liability claim regarding the off-site damage is that Westinghouse, as Plaintiff, is not the one with the injury.[8] As Westinghouse argues, the VOCs have been detected in homes located near the Hematite Site. The Court does not know the identity of the home owners or nearby residents, the ones who have been harmed by Movants for purposes of this Motion, because they are not involved in the instant suit. However, this Court does know that the allegedly harmed neighbors are separate and distinct from Westinghouse, as Plaintiff. Obviously, Westinghouse is not suffering an injury in-fact based on the injuries of others. Moreover, Westinghouse has not even alleged that any injury *to Westinghouse* is imminent.[9]

---

[8]The alleged injuries suffered by Westinghouse that have occurred on the Hematite Site have already been addressed above; this section strictly refers to the damage that has emanated from the Hematite Site.

[9]Even if Westinghouse could somehow argue that its injury is imminent, then this Court is right back where it started anyway because Westinghouse cannot bring a strict liability claim against the Movants for the damage that the Movants' inflicted on the Hematite Site which was

Furthermore, if the Court could somehow construe the damage done to nearby homes and neighbors as an injury-in-fact suffered by Westinghouse, which it does not, this Court could not issue an order against the Movants on the strict liability claim regarding unnamed third-party injuries that would alleviate or redress those third-party injuries. "To establish standing sufficient to meet the requirements of Article III of the United States Constitution, a party must establish [*inter alia*, that] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Hall v. Lhaco, Inc., 140 F.3d 1190, 1195 (8th Cir. 1998). If Westinghouse were to prevail on a claim arising out of others' injuries, Westinghouse would be unjustly enriched while the others who have suffered the harm would still be without recourse. Therefore, not only is there no injury-in-fact suffered by the Plaintiff Westinghouse, but any favorable decision would not be likely to redress the harm suffered by nearby residents.

In short, Westinghouse cannot pursue a strict liability claim against the Movants for the Movants' damage to their former property, the Hematite Site, during their respective periods of ownership. Additionally, Westinghouse does not have standing to bring a strict liability claim for the injury or harm that the Movants have done to others, not to the Plaintiff Westinghouse.[10] Therefore, the Motion with respect to the strict liability claim should be granted, and that claim should be dismissed.

*II. Count III -- Contribution*

In Count III, Westinghouse asserts a statutory claim for contribution pursuant to MO. REV. STAT. § 537.060 and a common law claim for contribution under Missouri law. See, Second

---

caused during their respective periods of ownership.

[10]In resolving the strict liability claim for purposes of the instant Motion, this Court does not reach the Movants' argument that Westinghouse assumed the risk when it obtained the SNM-33 license.

Am. Compl. ¶ 61. The Movants argue that Count III should be dismissed because Westinghouse cannot assert a claim for statutory contribution in the absence of a prior entry of judgement against the defendants. Furthermore, the Movants argue that Count II should be dismissed because Westinghouse cannot assert a claim for common law contribution when one can only be brought by a joint tortfeasor as part of an underlying third party action for damages and when Westinghouse has not alleged that there is a pending action against it. The statutory and common law contribution claims will each be taken in turn.

First, in regard to the statutory claim for contribution in Count III, Westinghouse argues in opposition that it should not be dismissed because this very proceeding in the instant case is designed to obtain a judgment determining the parties' liabilities consistent with MO. REV. STAT. § 537.060. This Court finds that Westinghouse's argument in opposition to the instant Motion is a misunderstanding of the term "judgment" in MO. REV. STAT. § 537.060 as discussed by the Missouri courts. For the reasons more fully explained below, a judgment must precede the statutory right to contribution.

In regard to the statutory claim for contribution, Section 537.060 provides in relevant part that "Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution...."[11] A requirement is that the parties to the contribution suit all have

---

[11] Section 537.060 continues with, "and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or **noncontractual indemnity** to any other tort-feasor. The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason

been found to be liable to the same party for the same injury. McNeil Trucking Co., Inc. v. Missouri State Highway and Transp. Comm'n, 35 S.W.2d 846, 847 (Mo. 2001). The Missouri Supreme Court explains that, "[t]his statutory right to contribution [is] available only after the entry of judgment against the defendants." State ex rel. General Electric Co. v. Gaertner, 666 S.W.2d 764, 765 (Mo. 1984); See also, Safeway Stores, Inc. v. City of Raytown, 633 S.W.2d 727, 730 (Mo. 1982) (noting that "Section 537.060 permits contribution between tortfeasors who are joint judgment debtors"). "It has no application to any proceedings prior to judgement." Missouri Pacific Railroad Co. v. Whitehead & Kales Co., 566 S.W.2d 466, 473 (Mo. 1978).

In this case, Westinghouse has not plead in its Complaint that a federal or state judgment has established that it is liable for the environmental remediation of the Hematite Site or any part thereof. Moreover, Westinghouse never mentions that any judgment whatsoever has been rendered against it.[12] Additionally, Westinghouse has not alleged that a federal or state judgment has been rendered establishing that Westinghouse and the Movants are joint tortfeasors. At most, Westinghouse has alleged that the State of Missouri filed a CERCLA action against it, but Westinghouse also alleges that it entered into a letter agreement with the State of Missouri that administratively settled certain aspects of that suit. Therefore, in the absence of a prerequisite judgement, Westinghouse cannot possibly bring a statutory claim for contribution pursuant to MO. REV. STAT. § 537.060. Consequently, this portion of Count III should be dismissed.

---

of vicarious liability." MO. REV. STAT. § 537.060. (2005) (emphasis in original).

[12]However, in opposition to the instant Motion Westinghouse argues that it has already been sued four times by third parties as a result of Defendants' dumping practices, that it has settled an additional twenty claims, and that residents of a nearby community brought three lawsuits against Westinghouse. See, Mem. in Opposition at 10. Yet, no where in its Complaint does Westinghouse mention any of these suits. In fact, Westinghouse never mentions that it actually lost any of these suits.

Second, with regard to Westinghouse's common law claim for contribution in Count III, Westinghouse argues that it should not be dismissed because Missouri law does not require a plaintiff to bring a contribution claim as part of an underlying third-party action. See Mem. in Opposition at 10 citing Safeway Stores, Inc., 633 S.W.2d at 730. Westinghouse also argues that it only has to meet a two-part test as announced in SSM Health Care St. Louis v. Radiologic Imaging Consultants, LLP, 128 S.W.3d 534, 539 (Mo. Ct. App. 2003) in order to proceed with its common law contribution claim.

Westinghouse's argument that Missouri law does not require a plaintiff to bring a contribution claim as part of an underlying third-party action is a correct statement, but it does not stand for the proposition suggested by Westinghouse. In the case of Safeway Stores, Inc., the issue was, "whether a defendant against whom a judgment of tort liability is rendered has an independent cause of action for apportionment of liability against concurrent tortfeasors" who are not judgment debtors. Safeway Stores, Inc., 633 S.W.2d at 728. The case does not hold that a potential tortfeasor can sue other potential tortfeasors. Nor does Safeway Stores, Inc., dispense with the necessity of a suit determining the liability of the one seeking contribution. Instead, as the Missouri Supreme Court confirmed in Gaertner, the Safeway Stores decision simply held that "the right of contribution also could be enforced in a separate suit after judgment has been entered in the original suit." State ex rel. General Electric Co., 666 S.W.2d at 766. In this case, Westinghouse has not plead that it has had any judgment rendered against it and so Safeway Stores is inapplicable.

In Westinghouse's other argument, it argues that it only has to meet the two-part test as stated by the Missouri Court of Appeals in SSM Health Care St. Louis. In SSM Health Care St. Louis, the court explained the two "primary requisites" for a contribution action as follows: "first,

- 15 -

the party seeking contribution and the party from whom it is being sought share a common liability or burden, and second, that the party seeking contribution has discharged more than his fair share of that common liability or burden." SSM Health Care St. Louis, 128 S.W.3d at 539. Westinghouse points out that its Complaint satisfies this two-part test because it has plead that it and the Movants, "share a common liability or burden, in that each is liable for the costs to remediate the environmental contamination at the Hematite Site under federal and/or state law." Complaint at ¶ 59. Also, Westinghouse has pleaded that it "has discharged more than its fair share of this common liability or burden." Complaint at ¶ 60.

Other than mentioning the two aforementioned "primary requisites" for a contribution action, the case of SSM Health Care St. Louis hardly mentions contribution again. Rather, it discusses an action for indemnity at great length, and never applies the two "primary requisites" as a "test." See, SSM Health Care St. Louis, 128 S.W.3d at 539-543. In SSM Health Care St. Louis, the court still states that there must be a common liability or burden, not that one may sue potential tortfeasors. Id. at 539. Additionally, as a appellate court, this case does not change the law as articulated by the Missouri Supreme Court. Admittedly, the Missouri courts have been less than clear on what constitutes an action for common law contribution, and therefore some historical overview in the development of common law contribution as explained by the Missouri Supreme Court is necessary.

Before the Missouri Supreme Court rendered its decision in Missouri Pacific Railroad Co., 566 S.W.2d 466, the only form of contribution in Missouri was statutory post-judgment contribution. As the court explained in State ex rel. General Electric Co. v. Gaertner, 666 S.W.2d at 765:

> Prior to Whitehead & Kales, the only right to contribution among tortfeasors was that granted by § 537.060, RSMo CumSup. 1983, providing for contribution

among tortfeasors who were "[d]efendants in a judgment." (citations omitted) This statutory right to contribution was available only after the entry of judgment against the defendants.

The Court created a narrow common law exception in Whitehead & Kales to permit, "enforcement of the right to contribution in the plaintiff's original action by means of impleader under Rule 52.11(a)." Gaertner, 666 S.W.2d at 765. Basically, Missouri's highest court announced a rule that ever so slightly relaxed the prerequisite judgment required in order to bring a suit for statutory contribution by allowing what would ordinarily be two separate lawsuits to occur at the same time in a single case by way of impleader under Rule 52.11(a). This allowance for impleader did not amend the statute, of course, and so it is known as a common law claim for contribution. However, in establishing this common law right by way of impleader, Missouri's highest court never stated that potential tortfeasors could be liable for contribution. In other words, one cannot bring a prejudgment suit against other potential tortfeasors without any *finding* of liability on behalf of those potential tortfeasors. Westinghouse does not fit into that common law contribution situation because there is no suit here determining Westinghouse's liability, and they have not sought to implead the Movants in this case for contribution. Rather, we simply have a contribution action first, seeking contribution from *potential* tortfeasors.

Although Westinghouse has plead that the Movants share a common liability or burden with Westinghouse, Westinghouse has not plead that it has been the subject of any judgment of tort liability. In other words, Westinghouse is arguing that *in its opinion*, the Movants share a common liability, not that there has been a finding that the Movants share a common liability. Westinghouse's opinion that the Movants are liable does not give Westinghouse the option to pursue an action for common law contribution against them.

Westinghouse also argues that the Movants share common liability for the Hematite Site because the Missouri Department of Natural Resources, or the Environmental Protection Agency, "could bring" a lawsuit against Westinghouse. Westinghouse also suggests in opposition to the Motion that it has been involved in four lawsuits and twenty claims, none of which happened to be mentioned in the Complaint. This Court will not entertain prophesies or predictions, nor will it rely on facts not contained within the Complaint in ruling on the instant Motion. Therefore, in the absence of a finding that the Movants are jointly liable, Westinghouse cannot bring a claim for common law contribution against them just because *it believes* that the Movants are liable. Thus, the Motion with regard to Count III should be granted.

An appropriate order will issue.

Dated this  10th   day of June, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE