UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WESTINGHOUSE ELECTRIC COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:03CV861 CDP |
| UNITED STATES OF AMERICA, et al., | ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

Plaintiff Westinghouse Electric Company owns a site previously owned or used by defendants to process nuclear fuel. The site is polluted, and Westinghouse has incurred costs cleaning up the pollution. Westinghouse seeks to recover those costs from the United States and four non-governmental defendants under sections 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* (CERCLA). On January 29, 2008, this Court granted the non-governmental defendants' motion for summary judgment on Westinghouse's contribution claims under § 113, leaving the § 107 cost recovery claims to be litigated. Westinghouse has asked me to amend that Order so as to deny summary judgment with respect to contribution for costs it paid to Missouri for the State's oversight of the cleanup. Because I find that this Court erred in

granting summary judgment to defendants on Westinghouse's contribution claim for those costs paid to Missouri under the consent decree, I will amend summary judgment as to those costs.

**I. Background**

The detailed procedural history of this case was set out in Judge Limbaugh's July 29, 2008 Memorandum Opinion, and there is no need for me to recite that entire history here. *See Westinghouse Elec. Co. v. United States*, 4:03CV861 SNL (E.D. Mo. July 29, 2008) (order granting summary judgment). Westinghouse seeks to recover various cleanup costs from defendants. This motion for reconsideration concerns one subset of those costs: money Westinghouse paid to the State of Missouri for Missouri's assistance in cleaning up the site. At issue is whether these costs may be pursued under § 113 of CERCLA. Judge Limbaugh's July 2008 opinion determined that these costs could not be recovered under that section.[1]

Congress enacted CERCLA in 1980 to address the "serious environmental and health risks posed by industrial pollution." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). CERCLA facilitates the cleanup of polluted sites in two ways: it grants the President broad powers to force cleanup of hazardous waste sites, and

---

[1] This case was transferred to the undersigned on August 18, 2008, because of Judge Limbaugh's retirement. Westinghouse filed its motion to reconsider shortly thereafter.

it requires those parties who may be responsible for contamination to contribute to the costs of cleanups. *E.I. DuPont De Nemours & Co. v. United States*, 508 F.3d 126, 129 (3d Cir. 2007).

The President's powers are outlined in § 104, § 105 and § 106, and have been delegated to the Environmental Protection Agency (EPA). 42 U.S.C. § 9604-9606 (2006); *Key Tronic Corp. v. U.S.*, 511 U.S. 809, 814 (1994) ("Sections 104 and 106 provide the framework for federal abatement and enforcement actions that the President, the EPA as his delegated agent, or the Attorney General initiates.").

Under § 104, the EPA may undertake a cleanup action directly. 42 U.S.C. § 9604(a)(1) (2006) ("the [EPA] is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time . . . or take any other response measure consistent with the national contingency plan which the [EPA] deems necessary to protect the public health or welfare or the environment."). Section 104 allows the EPA to coordinate, and provide funds for, remedial action taken or arranged by the federal government. Section 104(c)(3) provides that "the [EPA] shall not provide any remedial actions pursuant to this section unless the State in which the release occurs first enters into a contract or cooperative agreement with the [EPA] . . ." 42 U.S.C. §9604 (c)(3) (2006). Under § 104(d)(1), EPA may enter into a cooperative agreement with a

State so that the State may carry out response actions under § 104, and thus access a federal fund for the cleanup. 42 U.S.C. § 9604(d)(1) (2006). Section 104(d)(1) provides, in relevant part:

> A State or political subdivision thereof or Indian tribe may apply to the [EPA] to carry out actions authorized in this section. If the [EPA] determines that the State or political subdivision or Indian tribe has the capability to carry out any or all of such actions in accordance with the criteria and priorities pursuant to section 9605(a)(8) of this title, and to carry out related enforcement actions, the [EPA] may enter into a contract or cooperative agreement with the State or political subdivision or Indian tribe to carry out such actions.

*Id*.

The national contingency plan, authorized by § 105 and codified in 40 C.F.R. § 300.1 *et seq.* (2008), "identifies methods for investigating the environmental and health problems resulting from a release or threatened release and criteria for determining the appropriate extent of response activities." *Matter of Bell Petroleum Servs., Inc.,* 3 F.3d 889, 894 (5th Cir. 1993). The national contingency plan provides the organizational structure for when the federal government becomes involved in hazardous waste cleanup. 40 C.F.R. § 300.1 (2008).

Under CERCLA § 106, the EPA may compel responsible parties to undertake cleanup, either by administrative order or by seeking judicial injunctive relief. 42 U.S.C. § 9606(a) (2006) ("In addition to any other action taken by a state or local government . . . [the EPA] may require the Attorney General of the

United States to secure such relief as may be necessary . . . and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require . . . [the EPA may also issue] such orders as may be necessary . . .").

In addition to granting powers to the President (and, by delegation, to the EPA), CERCLA also requires that parties who may be responsible for pollution help pay for the cleanup. Section 107 of CERCLA lists a site's past and present owners and operators as parties who may be potentially responsible for cleanup of a contaminated site. 42 U.S.C. § 9607(a) (2006). Section 107 provides that these potentially responsible persons, or PRP's, are liable for "all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan," and "any other necessary costs of response incurred by any other person consistent with the national contingency plan." *Id*. The United States government, a state, or any other person that cleans up a hazardous waste site may pursue past and present owners of that site for "cost recovery" under this section.

In 1986, Congress amended CERCLA, enacting the Superfund Amendments and Reauthorization Act, which added § 113. *E.I. DuPont*, 508 F.3d at 129. Section 113(f) provides: "Any person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)] of this title, during or

following any civil action under . . . [§ 107(a)] . . ." 42 U.S.C. § 9613(f)(1) (2006). Further, a PRP who "has resolved its liability to the United States or a State in a judicially approved settlement" may seek contribution from non-settling PRP's. 42 U.S.C. § 9613(f)(3)(B) (2006). Persons sued under § 107 of CERCLA may, during or after suit, use § 113(f)(1) to seek out contribution from other PRP's who were not part of the suit. A PRP that has not been sued, but who has entered into a settlement agreement with the United States or a state, may use § 113(f)(3)(B) to seek contribution from those PRP's who were not part of the settlement.

In this case Westinghouse has sued defendants under both § 107 and § 113. The non-governmental defendants moved for summary judgment, arguing that Westinghouse may not bring a § 113(f) contribution action because the requirements of that section had not been met: Westinghouse was not a party to a pending or resolved § 107 suit, nor had there been an administrative or judicially approved settlement resolving CERCLA liability. This Court, in an opinion by Judge Limbaugh issued in July of 2008, granted summary judgment in favor of the non-governmental defendants. In that opinion, Judge Limbaugh held that Westinghouse had failed to meet the statutory requirements for bringing a § 113(f) contribution claim.

Westinghouse argued that it had met the statutory requirements of a § 113(f)(1) contribution claim because the State of Missouri had filed CERCLA

suits (in this federal court) against Westinghouse in 2003 and 2005. Westinghouse further contended that it could bring a § 113(f)(3)(B) contribution claim based on a Letter of Agreement reached with the State of Missouri in 2002, or, alternatively, based on a state court consent decree it entered into in June 2008. Westinghouse argued that both the letter and the state court consent decree were "judicially approved settlements" as required by § 113(f)(3)(B).

The Court rejected Westinghouse's arguments. The Court held that the CERCLA suits filed by Missouri against Westinghouse in 2003 and 2005 did not give rise to a § 113(f)(1) claim because both cases were dismissed without establishing liability. The Court also rejected Westinghouse's claims that the Letter of Agreement and the state consent decree were "judicially approved" settlements under § 113(f)(3)(B). The Letter of Agreement by its own terms did not purport to settle CERCLA liability and could be terminated at any time, so it did not constitute a "settlement" at all. Judge Limbaugh held that the state court consent decree was not a "judicially approved settlement." In doing so, Judge Limbaugh re-iterated his conclusion that the consent decree could not have established CERCLA liability because Missouri has no CERCLA authority absent express EPA delegation. *State of Missouri v. Westinghouse Elec. Co.*, 4:05CV315SNL (E. D. Mo. Jan. 22, 2007) (order denying motion to enter consent decree). In this motion for reconsideration, Westinghouse argues that Judge

- 7 -

Limbaugh erred in finding that the state court consent decree between Missouri and Westinghouse was not a "judicially approved settlement" triggering a § 113(f)(3)(B) contribution claim.

The United States agrees with Westinghouse on this point. While the United States argues that Westinghouse has not met the standard for a motion for reconsideration, and that summary judgment should not be reconsidered at all, the United States agrees that, if reconsidered, Judge Limbaugh's opinion was incorrect. According to the United States, contrary to Judge Limbaugh's ruling, Missouri does have authority to recover response costs under § 107(a)(4)(B) even without a delegation of authority from the EPA. EPA delegation under § 104, according to the United States, is not required for actions taken under the cost recovery or contribution sections of CERCLA.

## II. Standard for Motion for Reconsideration

Under Federal Rule of Civil Procedure 54(b), an interlocutory order "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and responsibilities." Fed. R. Civ. P. 54(b). Rule 54(b) "governs reconsideration of orders that do not constitute final judgments in a case." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). Summary judgment motions are interlocutory in nature, and may be reconsidered and revised up until the time a final judgment is entered. *Well's Dairy Inc. v.*

*Travelers Indem. Co. of Ill.*, 336 F. Supp. 2d 906, 909 (N.D. Iowa 2004); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 640, 647 (N.D. Iowa 2006).

District courts have considerable discretion in deciding whether to reconsider an interlocutory order under 54(b). *Wells Dairy*, 336 F. Supp. 2d at 909; *Ideal Instruments*, 434 F. Supp. 2d at 647. A court may reconsider an interlocutory order to "correct any clearly or manifestly erroneous findings of fact or conclusions of law." *Jones v. Casey's Gen. Stores*, 551 F. Supp. 2d 848, 854 (S.D. Iowa 2008). Reconsideration may be granted if the earlier decision misunderstood a party, made a decision outside of the adversarial issues, or because of a "controlling or significant change in law" since the issues were submitted to the court. *Singh*, 383 F. Supp. 2d at 101. While parties are not generally allowed to raise new legal arguments that they could have raised earlier, reconsideration may be granted "as justice requires." *Id*. The decision to reconsider a judgment or interlocutory order is one grounded in equity, and should be used to "prevent a judgment from becoming a vehicle of injustice." *See Harley v. Zoesch*, 413 F.3d 866 (8th Cir. 2005)(considering a motion for reconsideration of a final judgment under Federal Rule of Civil Procedure 60(b)); *see also Ideal Instruments*, 434 F. Supp. 2d at 647 (when considering motions for

reconsideration under Rule 54(b), courts should look to the standards for reconsideration under Rule 60(b) for guidance.).

**III. Westinghouse has satisfied the standard for reconsideration.**

**A. *Atlantic Research* is not a "change in the law" supporting reconsideration.**

Westinghouse argues that I should reconsider Judge Limbaugh's ruling because the Supreme Court's opinion in *United States v. Atlantic Research Corporation*, 127 S. Ct. 2331 (2007) redefined the relationship between § 113 and § 107. Westinghouse argues that Judge Limbaugh did not consider this change in the law. I disagree.

First, the parties provided letter briefs to Judge Limbaugh about the effect of *Atlantic Research* on the pending motion, and he cited the Supreme Court decision in the opinion. So, contrary to Westinghouse's suggestion, he was obviously aware of it and considered it in his opinion.

More importantly, however, the Supreme Court's ruling in *Atlantic Research* had no effect on the law Judge Limbaugh applied in his opinion. In *Atlantic Research*, the Supreme Court clarified the nature and scope of claims under § 107 and § 113. *Atlantic Research,* 127 S. Ct. at 2337-38. The main holding of *Atlantic Research* is that PRP's, or non-innocent parties, can sue other PRP's for cost recovery under § 107. *Id*. Before *Atlantic Research*, circuit courts were split on this question. Some courts had held that only innocent parties could

pursue cost recovery under § 107, and that the only remedy for PRP's to recover from other PRP's was under § 113. After *Atlantic Research*, PRP's could use § 107 to sue other PRP's for cleanup costs. *Id*.

To allay concerns that allowing PRP's to recover under § 107 would render § 113 meaningless, the Court clarified the complementary nature of the two remedies. 127 S. Ct. at 2338. Both sections operate to allow a party to recover costs of cleanup. The difference between the two remedies is that they are available to parties in different procedural circumstances: Section 107 may be used by parties who have voluntarily performed a site cleanup and incurred costs in doing so; section 113 may be used by parties who have not conducted cleanup, but who have been sued or threatened with suit by, and who have paid money in either a settlement or judgment to, the party conducting the cleanup. *Id*. ("Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a)."). The Court in *Atlantic Research* made it clear that a PRP, precluded from suing under § 113(f) because it had not been sued under § 107, could recover costs of a voluntary cleanup under § 107(a). *Id.* at 2335; *Niagara*

*Mohawk Power Corp. v. Consol. Rail Corp.*, 565 F. Supp. 2d 399, 401 (N.D.N.Y. 2008). It did not decide whether costs incurred under a consent decree, "are recoverable under § 113(f), § 107(a), or both." *Atlantic Research,* 127 S. Ct. at 2338 n.6; *Niagara*, 565 F. Supp. 2d at 401.

The Court's characterization of claims under § 107 and § 113 in *Atlantic Research* did not change the law that Judge Limbaugh used to grant summary judgment. Judge Limbaugh found that the state court consent decree was not a judicially approved settlement under § 113 because Missouri cannot enter into such an agreement without EPA authority. Westinghouse admits that the primary basis for this Court's conclusion was Judge Limbaugh's "previous determination that the State of Missouri does not have authority under CERCLA to take enforcement actions." *Atlantic Research* did not shed light on whether Missouri can enter into a consent decree without EPA authority, nor did Westinghouse identify any other intervening law that this Court failed to consider. Westinghouse has advanced the same arguments it advanced in briefing the summary judgment motion, and intervening case law does not provide a basis for reconsideration here.

Westinghouse's sole argument for reconsideration was that there has been an intervening change in the law. Although *Atlantic Research* did change the law with regard to whether PRP's could recover their own clean-up costs under § 107, that change in the law happened before Judge Limbaugh entered the summary

judgment order. That case provides no basis for me to reconsider this Court's prior order granting summary judgment on Westinghouse's § 113 claims.

**B. Reconsideration is in the "interest of justice."**

Although Westinghouse has not met the standard for reconsideration, I have discretion to reconsider a judgment or interlocutory order if doing so is in the interest of justice. *Harley*, 413 F.3d at 870. Westinghouse is concerned that, if precluded from recovery under § 113, it might be left without a way to recover the money it paid to Missouri under the consent decree. CERCLA was intended to encourage the voluntary cleanup of hazardous waste sites, and it may be in the interests of justice to reconsider a ruling that could preclude Westinghouse from recovering this subset of costs entirely. On the other hand, Westinghouse may very well be precluded from recovering these costs under either § 107 or § 113. I have, therefore, in the interests of justice, independently reviewed the parties' arguments and the law, and I conclude that reconsideration of Judge Limbaugh's opinion is appropriate.

Westinghouse's real complaint with Judge Limbaugh's ruling, of course, is with his determination that Missouri lacks enforcement authority under CERCLA and that, to the extent the state court consent decree purports to establish and settle CERCLA liability, it is null and void. Judge Limbaugh initially made his determination that the state lacked this authority in the related case, *State of*

*Missouri v. Westinghouse Elec. Co.*, 4:05CV315 SNL, when he denied Westinghouse's and Missouri's request to enter their first consent decree back in January of 2007. Instead of asking him to reconsider at that time, the parties announced that the case was settled and dismissed it without prejudice. They then turned to state court and had a state court enter the consent decree that they seek to rely on in this case. Thus, this motion to reconsider is really asking me to reconsider the ruling Judge Limbaugh made in that earlier case.

As reflected in the parties' briefs, there is a split of authority on the issue of whether a state settlement, in the absence of express EPA delegation, can be a judicially approved CERCLA settlement so as to trigger a § 113 contribution claim. After considering the briefs, I am persuaded by the United States' argument on this issue, and agree with those courts that have held that states have authority under § 107 to recover costs of response, regardless or whether they have entered into a § 104 cooperative agreement with the EPA. *See, e.g. Wash. State Dep't of Transp. v. Washington Nat'l Gas Co., Pacificorp*, 59 F.3d 793, 801 (9th Cir, 1995) ("States need not obtain EPA authorization to clean up hazardous waste sites and recover costs from potentially responsible parties."); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1046-48 (2d Cir. 1985) (holding that States can recover costs under § 107 regardless of whether EPA has authorized cleanup, and noting that § 107 is independent of § 104, which governs federal cleanup efforts).

Other courts have reached the same result as Judge Limbaugh reached, and have concluded that a state must enter into a § 104 cooperative agreement with the EPA before entering into a settlement triggering contribution under § 113. *See, e.g. Niagara Mohawk Power Corp v. Consol. Rail Corp.*, 436 F. Supp. 2d 398, at 402 (N.D.N.Y. 2006) ("A state has no CERCLA authority absent specific agreement with the federal Environmental Protection Agency."); *Asarco, Inc. v. Union Pac. R.R. Co.*, No. 04-2144, 2006 WL 173662, at *7 (D. Ariz. Jan. 24, 2006) ("The question is whether a settlement *lacking* EPA authorization can serve as a basis for a CERCLA contribution claim under Section 113(f)(3)(B). The Court believes that it cannot."); *W.R. Grace & Co. v. Zotos Int'l, Inc.*, No 98-CV8383, 2005 WL 1076117, at *4 (W.D.N.Y. May 3, 2005) ("Absent an express delegation by the EPA, at state has no CERCLA authority.").

I now conclude that this latter view is inconsistent with the language and structure of CERCLA. Section § 107(a) expressly imposes liability on potentially responsible parties "notwithstanding any other provision or rule of law, and subject only to the defenses listed in subsection (b)." 42 U.S.C. 9607 (a) (2006). Nothing in § 107(a)(4)(A), making a PRP liable for "all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan," mentions that any remedial action taken by a state must be taken under § 104 EPA authority. In contrast, in

the same section of the statute, § 107(a)(4)(D) expressly mentions § 104, making a PRP liable for costs of health assessments carried out under § 104(i). 42 U.S.C. § 9607(a)(4)(D) (2006).

The provisions of § 104 further support this reading of § 107. Section 104 bars federal expenditures for remedial actions unless the state in which the release occurs enters into a cooperative agreement with the federal government. *Washington State Dept. of Transp.*, 59 F.3d at 800; 42 U.S.C. § 9604(c)(3) (2006). If a state is not seeking reimbursement from the federal government, however, it need not obtain prior governmental approval for a response action to be consistent with the national contingency plan under §107. *Id*. at 801. "Section 107(a) was meant to stand by itself." *Id*. (quoting *United States v. Reilly Tar & Chem. Corp.*, 546 F. Supp. 1100, 1118 (D. Minn. 1982)). The cost recovery and contribution sections of CERCLA were intended to allow states to use "their own resources for cleanup and recovering those costs from polluters under [§ 107]." *Shore Realty*, 759 F.2d at 1047. Section 107's requirement that such costs be "not inconsistent with the national contingency plan," means that "states cannot recover costs inconsistent with the response methods outlined in the [plan]." *Id*. at 1048-49. Where a state is acting on its own, and not in collaboration with the federal government, EPA authorization is not required. *Id*. A state may participate in cleanup without entering into a §104 agreement with the EPA. The state may then

pursue the costs of that participation under a § 107 suit or a consent decree resolving § 107 liability.  A party held liable to the state under a §107 suit or consent decree may then pursue other potentially responsible parties for those costs.

In sum, I conclude that Judge Limbaugh's holding – that a state may not resolve CERCLA liability without § 104 EPA authorization – was an incorrect interpretation of the law.  I do not hold, however, that the state consent decree in this case necessarily resolved CERCLA liability.  Nor do I hold that the consent decree was sufficient to trigger cost recovery under § 107 or contribution under §113.  These issues raise questions of fact, and I cannot resolve them at this stage of litigation.  *Atlantic Research* did not decide whether costs incurred under a consent decree are recoverable under § 107, § 113, both, or neither.  At least one court has concluded that the determinative issue is whether the costs were "voluntary," relying on footnote 6 of *Atlantic Research*, 127 S. Ct. at 2338.  *See Reichhold, Inc. v. U.S. Metals Refining Co.*, 2008 WL 5046780 (D.N.J. Nov. 20, 2008).  For example, costs paid by a party who does not conduct its own cleanup but who is forced to contribute because of a legal judgment or settlement, are not "voluntary" and can be recovered only under § 113.  Other costs, even when incurred as the result of a protracted negotiation with a State, may be considered "voluntary" and thus recoverable under § 107.  *Reichhold*, 2008 WL 5046780 at

\* 7.  Whether the consent decree at issue in this case makes Westinghouse's costs paid to Missouri "voluntary" (appropriately pursued under § 107) or "involuntary" (appropriately pursued under § 113), or somewhere in between (not recoverable under either § 107 or § 113 or recoverable under both), cannot be determined without resolving factual questions that I cannot decide at this stage of the case.

## IV.  Conclusion

Westinghouse has asked me to reconsider this Court's prior Order granting summary judgment on Westinghouse's § 113 claims, and to deny summary judgment with respect to contribution for costs Westinghouse paid to Missouri for the State's oversight of the cleanup.  As a basis for reconsideration, Westinghouse argued that Judge Limbaugh failed to consider the change in law articulated by the Supreme Court in *Atlantic Research*.  Although I find that *Atlantic Research* did not change the law applied in this Court's prior ruling, in the interests of justice I have decided to reconsider the Order granting summary judgment on Westinghouse's § 113 claims.  Upon reconsideration, I find that Judge Limbaugh's prior ruling – that a state has no CERCLA authority absent express EPA delegation – was an incorrect interpretation of the law.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for reconsideration [#195] is granted, and the order granting summary judgment dated July 29, 2008

[#192] is amended so that the non-governmental defendants' motion for summary judgment on Westinghouse's CERCLA § 113(f) claim is denied as to costs Westinghouse paid to Missouri for Missouri's oversight of the cleanup, and is granted in all other respects.

                                                                  _____
                                                                  CATHERINE D. PERRY
                                                                  UNITED STATES DISTRICT JUDGE

Dated this <u>30th</u> day of March, 2009.